# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **A. JOHNSON PARKER,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| **v.** | } |
| | } |
| | }   **Case No.:  2:19-CV-00699-RDP** |
| **ANDREW PETROVICS, et al.,** | } |
| | } |
| **Defendants.** | } |
| | } |

## MEMORANDUM OPINION

This case is before the court on Defendants' Andrew Petrovics, Kathleen Hamrick, Pointz, Inc., and Innovation Depot Inc.'s (collectively, "Defendants") Motions to Dismiss. (Docs. # 36, 37, 38). The Motions have been fully briefed (*see* Docs. # 36, 37, 38, 40, 41, 42, 43, 44, 45) and are ripe for review. After careful consideration, and for the reasons discussed below, Defendants' Motions (Docs. # 36, 37, 38) are due to be granted in part and denied in part.

## I.      Background[1]

This case arises out of an intellectual property dispute. Plaintiff claims that in August 2016, he developed a "geo location points/rewards earning application" called Groundhog. (Doc. # 35 at 2, ¶ 9). Groundhog allows users to "earn 'points' for time spent in various venues around Birmingham, Alabama, which could then be redeemed for products, events, or other 'rewards' from those participating venues." (*Id.* ¶ 10). Groundhog utilizes Bluetooth to "track when users enter[] into bars and restaurants" and also tracks "their spending [habits] and/or time spent in those

---

[1] "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). Thus, for the purpose of resolving the Motions to Dismiss (*see* Docs. # 36, 37, 38), the court treats the well-pleaded allegations in the Amended Complaint (Doc. # 35) as true.

establishments." (*Id.* ¶ 11).

Plaintiff pitched Groundhog to one of his professors at University of Alabama at Birmingham ("UAB"), Elizabeth Turnbull. (*Id.* ¶ 15). Turnbull recommended that Plaintiff take his idea for Groundhog to iLab to discuss it with other professionals and entrepreneurs. (*Id.* ¶ 16). iLab is a partnership between UAB and Defendant Innovation Depot, Inc.,[2] "where UAB students are provided a platform to craft and enhance their entrepreneurial ideas in a safe and secure environment within the Innovation Depot community." (*Id.* ¶ 17).

In September 2016, Plaintiff approached Defendant Kathleen Hamrick, who was employed by both UAB (as a Director of the iLab and a representative for students) and Innovation Depot (as the Marketing and Education Director). (*Id.* ¶ 22). Before Plaintiff would discuss Groundhog with Hamrick, he asked her to sign a nondisclosure agreement. (*Id.* ¶¶ 25-26). She refused. (*Id.*). Hamrick told Plaintiff she could trust her with his concept, and that, in any event, she could not sign the nondisclosure agreement because if she did, she "wouldn't be able to talk to others to help [him]." (*Id.* ¶¶ 26-27). Plaintiff appeared satisfied with that response and proceeded to explain the basic concept of Groundhog to Hamrick. (*Id.* ¶ 29).

In November 2016, Hamrick "demand[ed]" that Plaintiff register Groundhog in an entrepreneurial program called "1 Million Cups," which was an event designed by Innovation Depot. (*Id.* ¶¶ 30-31). On November 17, 2016, Defendant Andrew Petrovics started Koyote, Inc., which "was advertised as an application that allowed users to know how popular venues [are] at a[ny] given time, which events were going on in or around Birmingham, and . . . information [about] happy hour/drink specials at venues." (*Id.* ¶ 32).

---

[2] In its Motion to Dismiss (*see* Doc. # 38), Innovation Depot states that it is a "non-profit organization that houses start-up companies and entrepreneurs in the Birmingham region." (*Id.* at 4).

On December 2, 2016, Plaintiff informed Hamrick he was uncomfortable presenting at 1 Million Cups due to fear of someone stealing the concept behind Groundhog. (*Id.* ¶ 34). Hamrick reassured Plaintiff that "the audience members were at the event to help promote and facilitate his concept." (*Id.* ¶ 35). Hamrick also told Plaintiff that "he needed to present at the event to 'show her he was serious about his business,' and that if [he] did not do the event, [she] would not work with him." (*Id.* ¶ 36). On December 7, 2016, Plaintiff presented Groundhog at 1 Million Cups. (*Id.* ¶ 39). Plaintiff alleges that Hamrick directed Petrovics to attend his presentation "for the purpose of learning . . . [and] taking Plaintiff's Groundhog points-based incentive application concept."[3] (*Id.* ¶ 38).

On December 19, 2016, Hamrick wrote an article outlining Petrovics's application, Koyote. (*Id.* ¶ 43). On January 17, 2017, Hamrick wrote another article promoting a Bluetooth device designed by Petrovics, and she described it as "hardware that can track accurate and time-specific population data based on cell phones" (*Id.* ¶¶ 45-46). Neither of Hamrick's two articles mentioned "anything about a points-based reward system or applicability to local Birmingham bar/restaurant establishments associated with Koyote." (*Id.* ¶¶ 44, 45).

On May 16, 2017, Hamrick wrote yet another article reviewing an application called "Pointz" along with another review of Koyote. (*Id.* ¶ 47). Both applications were created by Petrovics. (*Id.*). Hamrick posted this article on Innovation Depot's website. (*Id.*). On May 17, 2017, upon discovering the similarities between Pointz and Groundhog, Plaintiff confronted Hamrick. (*Id.* ¶ 48). Shortly thereafter, Petrovics changed the name of Koyote, Inc. to Pointz, Inc. ("Pointz"). (*Id.* ¶ 50). But, before Petrovics was able to get Pointz up and running, Plaintiff had already begun negotiating "early funding to begin marketing, [] developing, and selling

---

[3] Petrovics denies being at the 1 Million Cups event. (Doc. # 37 at 4).

Groundhog in Birmingham, Alabama," and he was in "negotiations with Birmingham bar/restaurant establishments to use Groundhog." (*Id.* ¶¶ 52-53). On June 1, 2017, Petrovics began "marketing, selling, and promoting Pointz in Birmingham." (*Id.* ¶ 51).

On May 7, 2019, Plaintiff filed his initial Complaint (Doc. # 1), and thereafter, on February 14, 2020, his first Amended Complaint. (Doc. # 35). Plaintiff advances four causes of action against Defendants: (1) Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (DTSA) (against Defendants Petrovics and Pointz); (2) a violation of the Alabama Trade Secrets Act (ATSA) (against Defendants Petrovics and Pointz); (3) Conspiracy (against Defendants Petrovics, Hamrick, Innovation Depot, and Pointz); and (4) Conversion (against Defendants Petrovics and Pointz).

## II.    Standards of Review

Because Defendants have moved to dismiss Plaintiff's claims under both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the court reviews the applicable legal standards for both subdivisions of Rule 12.

### A.    Rule 12(b)(1) Standard

Under Rule 12(b)(1), an attack on subject matter jurisdiction is either facial or factual. *Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial attacks "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1259.

Factual attacks, on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* at 1529. When the challenge is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

*Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)); *Ex Parte Safeway*, 990 So. 2d at 350 ("[A] court deciding a Rule 12(b)(1) motion asserting a factual challenge 'must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.'" (quotation omitted)).

Here, it is evident from the briefing that Defendant Hamrick -- the only Defendant challenging Plaintiff's Complaint under Rule 12(b)(1) -- asserts a facial attack.

**B.  The Rule 12(b)(6) Standard**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

5

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. Appx. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III.   Analysis

Counts One, Two, and Four of Plaintiff's Amended Complaint are asserted against Defendants Petrovics and Pointz only; Count Three is directed at all four Defendants. The court addresses each Count below. After careful review, the court concludes Defendants' Motions to Dismiss (Doc. # 36, 37, 38) are due to be granted in part and denied in part.

### A.   Counts One and Two: Misappropriation of Trade Secrets Under the Defend Trade Secrets Act ("DTSA") and Alabama Trade Secrets Act ("ATSA") (Against Defendants Petrovics and Pointz)

"The Defend Trade Secrets Act . . . created a private civil cause of action for trade secret misappropriation in which '[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1292 (M.D. Fla. 2018) (citing *Defend Trade Secrets Act of 2016*, S. 1890, 114th Cong. § 2 (2016)); 18 U.S.C. § 1836(b)(1). To plead a violation of the DTSA, a plaintiff must allege that he "'(i) possessed information of independent economic value' that (a) 'was lawfully owned by'

6

the plaintiff, (b) for which the plaintiff 'took reasonable measures to keep secret,' and (ii) the defendant 'used and/or disclosed that information' despite (iii) 'a duty to maintain its secrecy.'" *Resnick v. City of Troy*, 2019 WL 2092567, *5 (M.D. Ala. May 13, 2019) (quoting *Trinity Graphic, USA, Inc.*, 320 F. Supp. 3d at 1293). Similarly, under the ATSA, "in order to hold any defendant liable for misappropriating trade secrets, [a plaintiff] must first establish that it maintained trade secrets, as defined in the ATSA, and that those secrets are at issue in [the] case." *Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1273 (M.D. Ala. 2010); Ala. Code. § 8-27-2(1).

Here, Plaintiff has alleged he presented "his trade secrets for the Groundhog Application at the 1 Million Cups event with a[] reasonable belief of privacy and secrecy." (Doc. # 35 at 8, ¶ 58). He contends that Defendants Petrovics and Pointz "acquired, without . . . permission, Plaintiff's trade secrets for the Groundhog Application." (*Id.* ¶ 62). Defendant asserts that Plaintiff's claims fail as a matter of law because he has failed to allege that: (1) Groundhog is a trade secret; (2) he took reasonable measures to keep Groundhog secret; (3) Groundhog is not generally known or not readily ascertainable through proper means; (4) Groundhog has independent economic value; (5) Petrovics and Points misappropriated Groundhog by improper means; and (6) he is the owner of Groundhog, as a "trade secret." (*See generally* Doc. # 37). The court first addresses whether Plaintiff has plausibly alleged that Groundhog is a "trade secret," as that term is defined under the DTSA and ATSA. The court then addresses whether Plaintiff has plausibly alleged that Petrovics and Pointz misappropriated the information underlying Groundhog, and he is the "owner" of Groundhog. After careful review, the court concludes that Plaintiff has plausibly alleged a claim under both the DTSA and ATSA.

**1.    Plaintiff Has Plausibly Alleged that Groundhog is a Trade Secret**

Under the DTSA, the term "trade secret" means:

[A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices . . . if—

> (A) the owner thereof has taken reasonable measures to keep such information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). The language in the ATSA is nearly identical to that in the DTSA. A trade secret under the ATSA is information that:

a. Is used or intended for use in a trade or business;

b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;

c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;

d. Cannot be readily ascertained or derived from publicly available information;

e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and

f. Has significant economic value.

*Bell Aerospace Servs., Inc.*, 690 F. Supp. 2d at 1273 (quoting Ala. Code § 8–27–2(1)) (internal quotation marks omitted).

"In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998). But at this stage of the litigation, for a complaint to survive a motion to dismiss, it "need not contain 'detailed factual allegations[;]' . . . instead . . . [it] must contain 'only enough facts to state a claim to relief that is plausible on its face.' The factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Martin v. Auburn Univ. Montgomery*, 2012 WL

787047, *1 (M.D. Ala. Mar. 12, 2012) (internal citations omitted).

Here, Plaintiff alleges that Groundhog is a geo location application that uses "Bluetooth readers to track bar/restaurant patrons' purchases and location," and it "was designed, planned, and created for use solely in Birmingham, Alabama and solely for bar and restaurant establishments." (Doc. # 35 at 3, ¶¶ 10-12). Plaintiff divulged the basic concept of Groundhog to Hamrick who (although she refused to sign a nondisclosure agreement) assured him that she would keep the information confidential and that Plaintiff could trust her. Plaintiff then presented Groundhog at the 1 Million Cups event. He did so with the understanding and assurance that the participants and spectators would keep all of the presentations, including his own, confidential. The court concludes that by expressing to Hamrick on multiple occasions that he was concerned about his idea being stolen and thereafter receiving her assurances that it would not, Plaintiff has plausibly alleged he took reasonable measures to keep Groundhog information secret.

Additionally, the court concludes that Plaintiff has plausibly alleged that Groundhog has independent economic value and it is not generally known to or readily ascertainable by the public. In his Amended Complaint, Plaintiff alleged that, "[a]t the time Plaintiff created Groundhog, there was not a similar business/concept in Birmingham that applied solely to bar/restaurant establishments," and that "there was no similar product/application/business that utilized Bluetooth readers to track bar/restaurant patrons' purchases and location available."[4] (Doc. # 35 at 9, ¶ 72). When faced with a Rule 12(b)(6) motion, the court must accept these well-pleaded

---

[4] Although Petrovics and Pointz argue that "there are several businesses in the marketplace besides Pointz which mirror Plaintiff's alleged trade secret" (Doc. # 37 at 13-14), the Amended Complaint alleges that none of the named businesses are located in Birmingham, Alabama, which is the location Plaintiff alleges Groundhog was solely applicable to and where there was no similar application. (Doc. # 35 at 8, ¶ 60). But, even if similar applications utilizing Bluetooth exist elsewhere, "[a] court's review on a motion to dismiss is 'limited to the four corners of the complaint.' A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (internal citations omitted). Thus, the court need not determine at this stage of the litigation whether Defendants' allegations regarding other companies are true; rather, discovery is necessary to flesh out this issue.

allegations as true. *See American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) ("[W]here there are well-pleaded factual allegations, [the court must] 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'") (citation omitted). Furthermore, Plaintiff alleged that prior to the 1 Million Cups event, he was negotiating to secure funding for Groundhog and negotiating with bars/restaurants in Birmingham to utilize Groundhog. These allegations plausibly assert that Groundhog has independent economic value.

Finally, "[w]hether information constitutes a 'trade secret' is [generally] a question of fact." *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1291 (11th Cir. 2003) (citing *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410-11 (11th Cir. 1998)); *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 (11th Cir. 2020) ("[W]hether something is a trade secret is a question typically 'resolved by a fact finder after full presentation of evidence from each side.'"). This is not a matter that should be addressed at this early point in the litigation. Based on the allegations in the Amended Complaint, the court concludes that, at this stage of the case, Plaintiff has plausibly alleged that Groundhog, a geo location application, is a "trade secret" under both the DTSA and ATSA.

## 2. Plaintiff Has Plausibly Alleged that Defendants Petrovics and Pointz Misappropriated Groundhog

"For liability to attach under the DTSA [and the ATSA] . . . the information must be the fruit of wrongful acquisition, or misappropriation." *M.C. Dean, Inc.*, 199 F. Supp. 3d at 1357. Under 18 U.S.C. §1839(5), "misappropriation" means:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who—

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the

knowledge of the trade secret was—

>> (I) derived from or through a person who had used improper means to acquire the trade secret;

>> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

> (iii) before a material change of the position of the person, knew or had reason to know that—

>> (I) the trade secret was a trade secret; and

>> (II) knowledge of the trade secret had been acquired by accident or mistake;

(6) the term "improper means"—

> (A) includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and

> (B) does not include reverse engineering, independent derivation, or any other lawful means of acquisition[.]

*M.C. Dean, Inc.*, 199 F. Supp. 3d at 1354 (citing 18 U.S.C. §§ 1836(5)-(6)). Similarly, under the ATSA, a person who discloses or uses the trade secret of another, without a privilege to do so, is liable to the other for misappropriation of the trade secret if:

> (1) [t]hat person discovered the trade secret by improper means;

> (2) [t]hat person's disclosure or use constitutes a breach of confidence reposed in that person by the other;

> (3) [t]hat person learned the trade secret from a third person, and knew or should have known that (i) the information was a trade secret and (ii) that the trade secret had been appropriated under circumstances which violate the provisions of (1) or (2), above; or

> (4) [t]hat person learned the information and knew or should have known that it was a trade secret and that its disclosure was made to that person by mistake.

*Southern Field Maintenance & Fabrication LLC v. Killough*, 2018 WL 4701782, *3 (M.D. Ala. Oct. 1, 2018) (quoting Ala. Code § 8–27–3).

In his Amended Complaint, Plaintiff alleged that Hamrick "directed Petrovics to attend the 1 Million Cups event for the purpose of learning[] [about] and . . . taking Plaintiff's Groundhog points-based incentive application concept." (Doc. # 35 at 6, ¶ 38). Although discovery may provide more depth to (or even refute) the allegations in the first Amended Complaint, Plaintiff has plausibly alleged -- at least "above the speculative level" -- that Petrovics and Pointz misappropriated Groundhog. *See Twombly*, 550 U.S. at 555. According to Plaintiff, Hamrick "directed" Petrovics to attend the 1 Million Cups event in order to expropriate the underlying information in Groundhog. Plaintiff has asserted that Petrovics understood that public observers were not to steal presenters' ideas at 1 Million Cups, an event to be an entrepreneurial program for budding professionals. It is true that the allegations in this case indicate that 1 Million Cups was a public event. But, "[a]ctions may be 'improper' for trade-secret purposes even if not independently unlawful." *Compulife Software Inc.*, 959 F.3d at 1312 (citation omitted). Plaintiff has asserted that, after the event, Petrovics altered certain aspects of his application to make it similar to Groundhog.

Relevant to the determination of whether a plaintiff has plausibly alleged that a defendant "misappropriated" a trade secret:

> [T]he inadequacy of measures taken by the trade-secret owner to protect the secret cannot alone render a means of acquisition proper. So long as the precautions taken were reasonable, it doesn't matter that the defendant found a way to circumvent them. Indeed, even if the trade-secret owner took no measures to protect its secret from a certain type of reconnaissance, that method may still constitute improper means.

*Id.* At this stage of the litigation, Plaintiff has plausibly alleged that Petrovics and Pointz misappropriated Groundhog by improper means.

### 3. Whether Plaintiff is the Owner of Groundhog as a Trade Secret is Not to be Determined at this Stage of the Litigation

Defendants contend that Plaintiff has failed to demonstrate that he is the owner or licensee of Groundhog. *See* 18 U.S.C. §§ 1836(b)(1), 1839(4). Specifically, Defendants assert that "several

other businesses employ applications similar to Plaintiff's idea." (Doc. # 37 at 19). Plaintiff, however, contends that "[a]t the time Groundhog was created, there was no similar product/application/business that utilized Bluetooth readers to track bar/restaurant patrons' purchases and location available." (Doc. # 35 at 3, ¶ 13). In ruling on a Rule 12(b)(6) motion, the court is not the finder-of-fact. Thus, at this stage, the court is not to resolve the parties' fact disputes about whether Plaintiff was the "owner" of Groundhog. Rather, the court's task is to analyze whether Plaintiff has plausibly alleged a violation of the DTSA and ATSA by Petrovics and Pointz. This is true "[e]ven if [Plaintiff's allegations are] doubtful in fact." *Champagne v. Jacksonville State Univ.*, 2009 WL 10688035, *1 (N.D. Ala. Sept. 29, 2009) (citation omitted). Indeed, the Eleventh Circuit has noted that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. For Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). While the outcome may not be the same on a fully developed factual record, based on the allegations in the Amended Complaint, Plaintiff has plausibly alleged a violation of the DTSA and ATSA.

For all these reasons, Defendants Petrovics's and Pointz's Motion to Dismiss (Doc. # 37) is due to be denied as to Counts One and Two.

### B. Count Three: Conspiracy (Against Defendants Petrovics, Pointz, Hamrick, and Innovation Depot)

In Count Three of his Amended Complaint, Plaintiff claims that Defendants "knowingly and willingly conspired . . . to coerce Plaintiff to present his concept at the 1 Million Cups event;" that Hamrick directed Petrovics to attend the 1 Million Cups event for the sole purpose of learning and misappropriating Plaintiff's trade secrets; and that Petrovics obtained Plaintiff's alleged trade secrets at the event, and Hamrick assisted Petrovics in promoting his application created from

Plaintiff's trade secrets. (Doc. # 35 at 10, ¶¶ 79-82). Defendants contend that Plaintiff's conspiracy claim fails as a matter of law because (1) it is preempted by the ATSA, and (2) it fails to state a claim upon which relief can be granted. Defendant Hamrick also asserts that Plaintiff's conspiracy claim fails (as against her) because she is entitled to sovereign immunity and/or state-agent immunity.

The court first addresses Hamrick's sovereign immunity/state-agent immunity argument under Rule 12(b)(1), and then turns to the question of whether Plaintiff's conspiracy claim, as to all Defendants, survives a Rule 12(b)(6) motion.

### 1. Whether Defendant Hamrick is Entitled to Sovereign Immunity/State-Agent Immunity Is Not Properly Determined at this Stage of the Litigation

Plaintiff's conspiracy claim is grounded in state law. Hamrick argues that this claim cannot succeed against her because she is entitled to sovereign immunity under Article I, § 14 of the Alabama Constitution, or, alternatively, state-agent immunity. (Doc. # 9 at 5). Under Article 1, § 14, "the State and its agencies have absolute immunity from suit in any court. This immunity extends to the state's institutions of higher learning." *Ala. St. Univ. v. Danley*, 212 So. 3d 112, 122 (Ala. 2016) (citations omitted). Additionally, under Alabama law, state officers and employees, sued individually, receive absolute immunity from suit "when the action is, in effect, one against the state." *Danley*, 212 So. 3d at 122; *Ex Parte Davis*, 930 So. 2d 497, 502 n.5 (Ala. 2005) (quoting *Milton v. Espey*, 356 So. 2d 1202, 1202 (Ala. 1978)); *see Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740 (11th Cir. 2010) (noting that state-agent immunity "protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities.").

According to the Amended Complaint, Hamrick is an employee of both UAB and Innovation Depot. (Doc. # 35 at 4, ¶ 21). Although it appears Plaintiff intends to state a claim against Hamrick individually, the Amended Complaint is unclear. Nevertheless, the capacity in

which Hamrick is sued is important in determining whether Defendant Hamrick is entitled to any form of immunity. This is the case where sovereign immunity is asserted (by one sued in her official capacity) or state-agent immunity (by one sued in her individual capacity). With respect to official capacity suits, they are essentially one against state or government entity; as such, "the entity's policy or custom must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quotation omitted) (internal quotation marks omitted). With respect to individual capacity suits, they "seek to impose personal liability upon a government official for actions [s]he takes under color of state law." *McElroy v. City of Birmingham, Ala.*, 903 F. Supp. 2d 1228, 1242 (N.D. Ala. 2012) (quoting *Graham*, 473 U.S. at 166).

Here, while the Amended Complaint may be unclear, it is readily apparent that Plaintiff does not challenge a government policy, nor does he challenge conduct by Hamrick performed in any official capacity. Moreover, Plaintiff's opposition brief to Defendant Hamrick's Motion to Dismiss makes crystal clear that Hamrick is being sued in her individual capacity as an employee of Innovation Depot. To be sure, in his opposition brief, Plaintiff states that "all of [his] allegations relate to Hamrick's actions taken in the line and scope of her employment with Innovation Depot." (Doc. # 40 at 9). *See Pegram v. Herdrich*, 530 U.S. 211, 237 n.10 (2000) ("Though this case involves a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the complaint should therefore be construed generously, we may use [the plaintiff's opposition] brief to clarify allegations in her complaint whose meaning is unclear."). Thus, although Plaintiff alleged in his Amended Complaint that he relied on Hamrick's assurances as a Director of the iLab, those factual allegations lend support as to why Plaintiff agreed to disclose information about Groundhog to Hamrick and present that information at 1 Million Cups, not as to what capacity Hamrick was operating in when she allegedly engaged in a conspiracy.

15

Consequently, Defendant Hamrick's Motion to Dismiss (Doc. # 36) is due to be denied. She cannot assert sovereign or state-agent immunity to fend off a claim asserted against her in her individual capacity.

### 2. Plaintiff Has Plausibly Alleged a Conspiracy Against Defendants

Defendants collectively assert that Plaintiff's conspiracy claim must be dismissed because (1) it is preempted by the ATSA, and (2) it fails as a matter of law.

#### a. Preemption

The "ATSA provides a cause of action 'for misappropriation of [a] trade secret.'" *Arkema Inc. v. Emerson Process Mgmt., LLLP*, 413 F. Supp. 3d 1191, 1193 (S.D. Ala. 2019) (quoting Ala. Code § 8–27–3). "The [A]ct is intended to [both] codify and . . . modify the common law of trade secrets in Alabama. Where the [A]ct codifies, pre-existing sources may shed light on the meaning of the statute. There is no intention, however, to supersede other areas of the law." *Id.* at 1194.

> The act draws primarily on the common law of trade secrets as it is reflected in the first Restatement of Torts (1939). Where contemporary problems or other policy considerations make deviations from the Restatement advisable, the act draws first from the Uniform Trade Secrets Act and the case law that has developed since the Restatement; however, where necessary the Alabama Act differs from these sources (e.g., the length of the statute of limitations and the decision not to use the term "espionage" in the definition of the term "improper means").

*Madison Oslin, Inc. v. Interstate Res., Inc.*, 2012 WL 4730877, *5 (N.D. Ala. Sept. 30, 2012).

However, the Supreme Court of Alabama has interpreted Section 8–27–3 "to replace common law tort remedies for the misappropriation of trade secrets." *Id.* (quoting *Allied Supply Co. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991)). To be sure, "*Allied Supply* establishes the principle that any common law tort claim that, whatever its name, provides a theory of recovery for the misappropriation of a trade secret is preempted by ATSA." *Id.* This includes "not only common law claims specifically alleging the misappropriation of trade secrets[,] but also other causes of action based on the *same* underlying facts giving rise to a claim under the ATSA." *Madison Oslin,*

16

*Inc.*, 2012 WL 4730877, at *6 (citation omitted). Thus, "[t]o the extent [a] plaintiff[] plead[s] [a] common law cause[] of action based on the same underlying facts as those giving rise to [his or her] claim under the ATSA, . . . such cause[] of action [is] preempted."[5] *Id.* at *9. But, adhering to the Rule 12(b)(6) standard, the court understands that, with respect to the ATSA and Plaintiff's claim of conspiracy (and conversion, as discussed below), it "is limited to determining which of plaintiff['s] common law claims, as a matter of law, may be plead alongside a misappropriation claim under the ATSA." *Madison Oslin, Inc.*, 2012 WL 4730877, at *5 (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009)).

Here, Plaintiff's common law conspiracy claim rests on the same factual information underlying his ATSA claim. Plaintiff alleges that Hamrick (1) "coerced [him] to present his trade secrets [*i.e.*, Groundhog] at the 1 Million Cups event," and (2) directed Petrovics to attend the 1 Million Cups event for the sole purpose of learning and misappropriating Plaintiff's trade secrets." (Doc. # 35 at 10, ¶¶ 80, 81). Plaintiff also alleges that Innovation Depot "falsely put forth the 1 Million Cups event as a safe environment to present ideas and receive feedback without anyone stealing ideas." (*Id.* ¶ 83). Although these allegations center on the alleged misappropriation of Groundhog as a trade secret at the 1 Million Cups entrepreneurial event, the court concludes that Plaintiff's conspiracy claim is not preempted by the ATSA because the court does not understand Plaintiff's conspiracy claim to be "inconsistent" with Section 8–27–3; rather, under the allegations made in this case against Defendants (particularly Hamrick and Innovation Depot), it merely provides a vehicle for Plaintiff to allege that multiple individuals agreed to misappropriate confidential information.[6] To be sure, the court does not read *Allied Supply* as foreclosing the

---

[5] The *Madison Oslin* court provided an in-depth discussion on the legislative history and preemptive scope of the ATSA. *See Madison Oslin, Inc.*, 2012 WL 4730877.

[6] Defendants cite *Argos USA LLC v. Young* for the proposition that a common law conspiracy claim is preempted by the Georgia Trade Secrets Act, which is similar, but not identical, to the ATSA. 2019 WL 4125968, at

possibility of a civil conspiracy claim surviving a motion to dismiss alongside a claim under the ATSA. In fact, the court in *Allied Supply* held that the plaintiff's conspiracy claim did not survive a motion for summary judgment because there were no underlying causes of action for it to stand on; not necessarily that it was preempted by the ATSA. *Allied Supply*, 585 So. 2d at 36. Moreover, a civil conspiracy claim obviously does not in every situation rest on misappropriation. For example, a civil conspiracy claim could rest on a claim for a violation of federal securities regulations. A conspiracy claim is not an independent cause of action but rather provides a vehicle to hold additional persons (*i.e.*, those who conspire with a tortfeasor, or in this case one who violates a statute) liable. This further supports the court's conclusion that Plaintiff's civil conspiracy claim is not preempted by the ATSA because it is not inherently "inconsistent" with the ATSA. If anything, under these circumstances, the two claims run parallel to each other and require Plaintiff to prove his ATSA claim to recover against anyone (even under his conspiracy theory).[7]

### b. Failure to State a Claim Upon Which Relief Can Be Granted

Under Alabama law, civil conspiracy requires "a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Camp v. Corr. Med. Servs., Inc*, 668 F. Supp. 2d 1338, 1367 (M.D. Ala. 2009), *aff'd in part sub nom. Camp v. Corr. Med. Servs., Inc.*, 400 F. App'x 519 (11th Cir. 2010) (internal citations omitted).

---

*12 (N.D. Ga. June 28, 2019). The court in *Argos USA* held that the plaintiff's civil conspiracy claim was preempted by the Georgia Trade Secrets Act because it relied on the same factual allegations of misappropriation for its Georgia Trade Secrets Act claim. *Id.* It reached this conclusion after acknowledging that the Georgia Trade Secrets Act "preempts claims that rely on the same allegations as those underlying the [p]laintiff's claim for misappropriation of a trade secret." *Id.* (quoting *Robbins v. Supermarket Equip. Sales, LLC*, 722 S.E.2d 55, 58 (Ga. 2012)). While this case may be persuasive, it concerns a different state statue, it is not controlling, and the court is not bound to follow it here. Rather, under the specific allegations of this case, and at this stage of the litigation, the court concludes that Plaintiff's conspiracy claim survives a Rule 12(b)(6) challenge. However, this is not to say that, on a more fully developed factual record, the court might not rule differently.

[7] Plaintiff's conspiracy claim cannot be based on Plaintiff's conversion claim because that claim, as discussed below, is preempted by the ATSA.

Importantly, absent some underlying wrong, there can be no conspiracy. *Camp*, 668 F. Supp. 2d at 1367; *see DGB, LLC v. Hinds*, 55 So. 3d 218, 234 (Ala. 2010) (citations omitted); *see also Allied Supply Co. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991) ("A conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed. . . . If the underlying cause of action is not viable, the conspiracy claim must also fail.").

Here, Plaintiff has plausibly alleged that Defendants Hamrick, Petrovics, Pointz, and Innovation Depot formed an agreement regarding the misappropriation of the trade secrets behind Groundhog. Specifically, Plaintiff alleges that Hamrick -- who worked for Innovation Depot as a "director" -- directed (and then persuaded) Petrovics to attend the 1 Million Cups event, which was put on by Innovation Depot, in order to steal the trade secret information underlying Groundhog, and then promoted Petrovics's new application that was created based upon misappropriated trade secret information used with Groundhog. These allegations state a plausible conspiracy claim and are sufficient to place Defendants on notice of what the facts are that underlie that claim.

Therefore, Defendants' Motions to Dismiss (Doc. # 36, 37, 38) are due to be denied as to Count Three.

### C.  Count Four: Conversion (Against Defendants Petrovics and Pointz)

In Count Four of his Amended Complaint, Plaintiff alleges that "Petrovics used and exercised control over Plaintiff's intellectual property without permission to utilize his concepts or trade secrets in the creation of the Pointz application." (Doc. # 35 at 11, ¶ 93). Petrovics and Pointz contend that Plaintiff's conversion claim necessarily fails because it is preempted by the ATSA, or, alternatively, it fails to state a claim upon which relief can be granted.

"Under Alabama law, to establish a claim for conversion, a plaintiff must show a wrongful taking, an illegal assumption of ownership, an illegal use o[r] misuse of another's property[,] or a wrongful detention or interference with another's property." *Ages Grp., L.P. v. Raytheon Aircraft Co.*, 22 F. Supp. 2d 1310, 1323 (M.D. Ala. 1998) (citing *Birmingham–Jefferson Cty. Transit Authority v. Arvan*, 669 So. 2d 825, 828 (Ala. 1995)). But, as it relates to this context, "[a] misappropriation of a trade secret accomplished by a conversion is still a misappropriation of a trade secret and must be redressed under ATSA and not under the common law theory of conversion." *Arkema*, 413 F. Supp. 3d at 1194.

Here, Plaintiff's conversion claim is undeniably based on Defendants' alleged wrongful use and benefit of Plaintiff's "concepts and trade secrets to create" the Pointz application. (Doc. # 35, ¶ 92). That is, Plaintiff's conversion claim is based on the act of misappropriating the trade secret information underlying Groundhog—which is merely another way of asserting that Defendants wrongfully took Plaintiff's confidential information. According to *Allied Supply*, this is precisely the type of claim that the ATSA intended to preempt: a cause of action that is "inconsistent" with the ATSA (or, put another way, a cause of action that provides an alternative claim by which a plaintiff may achieve the same result). Therefore, the court concludes that Plaintiff's common law conversion claim is preempted by the ATSA.[8] *See Madison Oslin, Inc.*, 2012 WL 4730877, at *9 (quoting *Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1276 (M.D. Ala. 2010)). As Judge Blackburn reasoned in *Madison Oslin, Inc.*:

---

[8] The court acknowledges that another member of this court has held that a common law conversion claim is not preempted under the ATSA. *See Acoustic Artistry, LLC v. Peavey Electronics Corp.*, 2013 WL 12250381 (N.D. Ala. 2013). In *Acoustic Artistry*, the court held that "except for common law *misappropriation* claims, other common law torts are not subsumed by the Act." *Id.* at *8. However, as Judge Steele noted in *Arkema*, the Supreme Court of Alabama in "*Allied Supply* did not use the quoted phrase ["common law *misappropriation* cause of action"] to restrict preemption to a single cause of action traveling under a particular name but rather as a shorthand to describe any tort claim brought to redress the misappropriation of a trade secret." *Arkema Inc.*, 413 F. Supp. 3d at 1194 (emphasis added). Here, the court agrees with Judge Steele and concludes his interpretation is consistent with Alabama law.

> The wording of Section 8–27–6 suggests that the Alabama legislature intended an even greater preemptive scope than permitted in the UTSA where claims made under the ATSA "are inconsistent with the common law of trade secrets." The common law of trade secrets permitted the allegedly wronged party to plead multiple remedies. Section 8–27–6 indeed is inconsistent with common law as it "is intended both to codify *and to modify* the common law of trade secrets in Alabama" as reflected in the first Restatement of Torts, including the preemption of inconsistent common law trade secret claims. To the extent plaintiffs plead common law causes of action based on the same underlying facts as those giving rise to their claim under the ATSA, such causes of action are preempted.

*Madison Oslin, Inc.*, 2012 WL 4730877, at *9 (internal citations omitted).

Moreover, it is prudent to note that determining whether the Uniform Trade Secrets Act (which gave the ATSA life[9]) preempts common law causes of action is not dependent on whether the "misappropriated information" constitutes a trade secret. This is so because "the [Uniform Trade Secrets Act] preempts all claims based upon the unauthorized use of information, even if the information does not meet the statutory definition of a trade secret." *New S. Equip. Mats, LLC v. Keener*, 989 F. Supp. 2d 522, 534 (S.D. Miss. 2013) (citing *Mediware Information Sys., Inc. v. McKesson Information Solutions, LLC*, 2007 WL 926142, *2 (D. Kan. Mar. 26, 2007)) (declining to address the issue because the tortious interference claims alleged by the plaintiff are not "based upon misappropriation of a trade secret" and thus are not preempted); *AirDefense, Inc. v. AirTight Networks, Inc.*, 2006 WL 2092053, *3 (N.D. Cal. July 26, 2006) (agreeing with "multiple federal courts" that claims based on the same factual allegations as the claim for misappropriation of trade secrets are preempted and evaluating claims when ruling on a motion to dismiss); *Mortgage Specialists, Inc. v. Davey*, 153 N.H. 764, 904 A.2d 652, 664 (2006); *Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) ("Because all claims stemming

---

[9] Although the cases cited in support do not apply the ATSA, the ATSA is modeled after and closely parallels the Uniform Trade Secrets Act. Therefore, the court does not hesitate to conclude (as did the courts in both *Madison Oslin* and *Arkema*) that the ATSA preempts common law causes of action that are based on the same factual allegations as a claim for misappropriation of trade secrets.

from the same acts as the alleged misappropriation are intended to be displaced, a claim can be displaced even if the information at issue is not a trade secret."); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002) (upholding the district court's determination that common law claims based on "the same alleged wrongful conduct as the trade secrets claims" are precluded); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000) (rejecting an argument that "preemption is improper because the confidential information taken by [defendant] may not rise to the level of a trade secret," and explaining that this "theory would render [the displacement provision] meaningless, for it would forbid preemption of state law claims until a final determination has been made with respect to whether the confidential information at issue rises to the level of a trade secret"); *see also Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F. Supp. 2d 722, 730 (N.D. Ohio 1999). The court finds these cases persuasive and concludes that it is unnecessary for the court to determine whether Groundhog is a "trade secret" under either the ATSA or the DTSA to determine whether Plaintiff's conversion claim is preempted.

Finally, although Plaintiff argues that he should be allowed to plead his common law conversion claim in the alternative (in the event his DTSA and ATSA claims fail), allowing Plaintiff's conversion claim to proceed would defeat the purpose for which Section 8–27–6 was enacted: to supersede the common law when it is "inconsistent" with the statute. Applying the Uniform Trade Secrets Act, which again the ATSA is drawn from, the Middle District of Tennessee remarked:

> [A] a plaintiff surely cannot use general tort causes of action to revive claims which would otherwise not be cognizable in light of the UTSA (i.e., claims alleging theft of non-trade secret information). It is a legal *non sequitur* to suggest general tort causes may be employed to protect legal rights which otherwise do not exist . . . . Moreover, such an approach would be wholly inconsistent with the UTSA's goals of promoting uniformity and predictability . . . . A claim cannot be preempted or not preempted based entirely upon whether or not the information at issue qualifies as a trade secret. If the information is a trade secret, the plaintiff's claim is preempted; if not, the plaintiff has no legal interest upon which to base his or her

22

claim. Either way, the claim is not cognizable.

*SDC Fin., Inc. v. Bremer*, 2019 WL 4393543, *11 (M.D. Tenn. Sept. 13, 2019) (quoting *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 656-67 (E.D. Tenn. 2004)). The Northern District of Georgia has also agreed with this conclusion, holding that the Plaintiff's common law claim for conversion, among others, could not serve as an alternative theory of recovery should the information ultimately not qualify as a "trade secret," because the Georgia Trade Secrets Act, which is similar to the ATSA, "is the exclusive remedy for misappropriation of trade secrets." *Opteum Fin. Servs. LLC v. Spain*, 406 F. Supp. 2d 1378, 1380 (N.D. Ga. 2005).

Consequently, Defendants' Petrovics and Pointz's Motion to Dismiss (Doc. # 37) is due to be granted as to Count Four.

## IV.  Conclusion

For all the foregoing reasons, the court concludes that Defendants' Motions to Dismiss (Doc. # 36, 37, 38) are due to be granted in part and denied in part. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this July 14, 2020.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE